**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ILLINOIS GAMBLING RECOVERY LLC,

*Plaintiff*,

v.

KALSHI INC., KALSHIEX LLC, KALSHI KLEAR
INC., KALSHI KLEAR LLC, KALSHI TRADING
LLC, SUSQUEHANNA INTERNATIONAL
GROUP, LLP, SUSQUEHANNA GOVERNMENT
PRODUCTS, LLLP, ROBINHOOD MARKETS,
INC., ROBINHOOD DERIVATIVES, LLC, and
WEBULL CORPORATION,

*Defendants*.

Case No. 1:25-cv-11374

Judge Manish S. Shah

**KALSHI DEFENDANTS', SUSQUEHANNA DEFENDANTS', AND
DEFENDANT WEBULL CORPORATION'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.     THIS COURT HAS FEDERAL QUESTION JURISDICTION ........................................ 2

     A.    Federal Law is Necessarily Raised by Plaintiff's Cause of Action ....................... 3

     B.    Federal Law is Actually Disputed by the Parties.................................................... 5

     C.    The Federal Question Raised is Substantial and Capable of Being Resolved Without Disrupting State Interests ........................................................... 6

II.    THIS COURT HAS DIVERSITY JURISDICTION BECAUSE THE SHAM DEFENDANTS ARE FRAUDULENTLY JOINED ...................................................... 8

     A.    There is No Colorable Claim Against Webull Corporation.................................... 8

     B.    There is No Colorable Claim Against the Susquehanna Defendants ................... 11

III.   THE COURT HAS JURISDICTION UNDER CAFA.................................................... 13

IV.   PLAINTIFF IS NOT ENTITLED TO COSTS AND FEES............................................ 15

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albers v. Lamson*,
    42 N.E.2d 627 (Ill. 1942) ...................................................................................................3

*Allen v. Boeing Co.*,
    784 F.3d 625 (9th Cir. 2015) .........................................................................................14

*Anderson v. Naperville Rotary Charities Inc.*,
    2019 WL 1368551 (Mar. 22, 2019) ..............................................................................12

*Cordeck Sales, Inc. v. Constr. Sys., Inc.*,
    917 N.E.2d 536 (Ill. 2009) ..............................................................................................4

*Diaz v. Sheppard*,
    85 F.3d 1502 (11th Cir. 1996) ........................................................................................8

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing*
    *& Heating, Inc.*,
    3 F.4th 954 (7th Cir. 2021) .............................................................................................8

*Empire Healthchoice Assur. Inc. v. McVeigh*,
    547 U.S. 677 (2006) .........................................................................................................7

*In re Ethylene Oxide Coordinated Pretrial Procs.*,
    2024 WL 4953820 (N.D. Ill. Dec. 3, 2024) ................................................................12

*Gebran v. Wells Fargo Bank, N.A.*,
    2016 WL 7471292 (C.D. Cal. Dec. 28, 2016) ............................................................12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ......................................................................................................5, 7

*Gunn v. Minton*,
    568 U.S. 251 (2013) ..................................................................................................2, 5, 7

*Holland v. Swain*,
    94 Ill. 154 (1879) ...........................................................................................................10

*Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*,
    34 F.3d 1310 (7th Cir. 1994) .........................................................................................9

*Humphrey v. Viacom*,
    2007 WL 1797648 (D.N.J. June 20, 2007) ................................................................12

*Jacobson v. Ford Motor Co.*,
  1999 WL 966432 (N.D. Ill. Sept. 30, 1999) ...........................................................8

*KalshiEX LLC v. Flaherty*,
  No. 1:25-cv-02152-ESK-MJS, 2025 WL 1218313 (D.N.J. Apr. 28, 2025) ...........................7

*KalshiEX LLC v. Flaherty*,
  No. 25-01922 (3d Cir. argued Sept. 10, 2025)...........................................................8

*KalshiEX, LLC v. Hendrick*,
  No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) ........................7

*KalshiEX LLC v. Martin*,
  No. 1:25-cv-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025) ...................................7

*KalshiEX LLC v. Martin*,
  No. 25-01892 (4th Cir. filed Aug. 6, 2025) ...............................................................8

*KalshiEX, LLC v. Schuler*,
  No. 2:25-cv-01165-SDM-CMV (S.D. Ohio filed Oct. 7, 2025)........................................7

*KalshiEX, LLC v. Williams*,
  No. 1:25-cv-08846 (S.D.N.Y. filed Oct. 27, 2025) ......................................................7

*Kizer v. Walden*,
  198 Ill. 274 (1902) ..........................................................................................10

*Langone v. Kaiser*,
  2013 WL 5567587 (N.D. Ill. Oct. 9, 2013)...................................................10, 12, 13

*Lott v. Pfizer, Inc.*,
  492 F.3d 789 (7th Cir. 2007) ..............................................................................15

*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005)..........................................................................................15

*Miceli v. Smith & Nephew, Inc.*,
  2022 WL 18663123 (S.D. Fla. Nov. 28, 2022).........................................................12

*Minn. Mining & Mfg. Co. v. Plymouth Rubber Co.*,
  178 F. Supp. 591 (N.D. Ill. 1959) ........................................................................11

*Mississippi v. Louisiana*,
  506 U.S. 73 (1992)...........................................................................................5

*N. Am. Derivatives Exch., Inc. v. Nev. Gaming Control Bd.*,
  No. 2:25-cv-00978-APG-BNW, 2025 WL 2916151 (D. Nev. Oct. 14, 2025)....................7, 8

*Poulos v. Naas Foods, Inc.*,
   959 F.2d 69 (7th Cir. 1992) ....................................................................8, 9, 10, 12

*Robinhood Derivatives, LLC v. Dreitzer*,
   No. 2:25-cv-01541-APG-DJA (D. Nev. filed Aug. 19, 2025)...................................7

*Robinhood Derivatives, LLC v. Flaherty*,
   No. 1:25-cv-14723-ESK-MJS (D.N.J. filed Aug. 19, 2025) ....................................7

*Rosas v. BB Holdings P'ship*,
   362 F. Supp. 2d 986 (S.D. Ill. 2005).......................................................................9

*Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*,
   966 F.3d 661 (7th Cir. 2020) ...........................................................................3, 4, 5

*Smolko v. Mapei Corp.*,
   2021 WL 7286001 (E.D. Ky. Nov. 15, 2021) .......................................................11

*Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*,
   810 F.3d 509 (7th Cir. 2016) ................................................................................12

*Sonnenberg v. Oldford Grp., Ltd.*,
   2015 WL 1379505 (S.D. Ill. Mar. 24, 2015) ....................................................3, 13

*Soto v. Sky Union, LLC*,
   159 F. Supp. 3d 871 (N.D. Ill. 2016) ....................................................................14

*State Mut. Life Ins. Co. v. Newton*,
   89 Ill. App. 353 (Ill. App. Ct. 1899) .......................................................................4

*Structural Metals, Inc. v. S & C Elec. Co*,
   590 F. App'x 298 (5th Cir. 2014) ..........................................................................12

*Texas v. United States*,
   523 U.S. 296 (1998)...............................................................................................11

*Warthman v. Genoa Twp. Bd. of Trs.*,
   549 F.3d 1055 (6th Cir. 2008) ................................................................................8

*Yee v. KalshiEx LLC*,
   No. 25-cv-8585-JLR (S.D.N.Y. Oct. 16, 2025), Dkt. No. 1 ..................................14

**Statutes**

7 U.S.C. § 1a.............................................................................................................3

7 U.S.C. § 2...........................................................................................................4, 5

7 U.S.C. § 7...............................................................................................................6

7 U.S.C. § 7a-2 .................................................................................................5

28 U.S.C. § 1331 ...............................................................................................2

28 U.S.C. § 1332 ..............................................................................2, 8, 13, 14

28 U.S.C. § 1711(2) .........................................................................................14

720 Ill. Comp. Stat. Ann. 5/28-8 .............................................................2, 3, 10

**Other Authorities**

17 C.F.R. pt. 38 ..................................................................................................6

Fed. R. Civ. P. 23 ............................................................................................14

In the Matter of the Application of KalshiEX LLC for Designation as a Contract
    Market, Order of Designation, Commodity Futures Trading Commission
    (Nov. 3, 2020) ..........................................................................................3

S. Rep. No. 109-14 (2005) ...............................................................................14

Sanford J. Grossman & Merton H. Miller, *Liquidity and Market Structure*
    43 J. FIN. 617 (1988) ...............................................................................11

U.S. Const. art. VI, cl. 2 .....................................................................................6

Wayback Archive, Kalshi Help Center, Markets on Brokers,
    https://web.archive.org/web/20250620203255/https://help.kalshi.com/markets
    /markets-on-brokers ..............................................................................10

Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC (together, the "Kalshi Defendants"), Susquehanna International Group, LLP, and Susquehanna Government Products, LLLP (together, the "Susquehanna Defendants"), and Webull Corporation (collectively, the "Removing Defendants"), submit this memorandum of law in opposition to Plaintiff's Motion to Remand. Dkt. No. 21 ("Pl's Mot.").[1]

## PRELIMINARY STATEMENT

Remand is not appropriate. This is an attack on federally authorized conduct dressed up as an anachronistic state-law claim. It is one chess piece in a broader effort by Plaintiff—whose sole member has filed copycat actions against the same Defendants in five other states—to evade federal review and recover a windfall in state courts across the country. Plaintiff seeks to recover all revenue that Defendants have earned from facilitating federally regulated swap transactions, executed on a designated contract market ("DCM") registered with the Commodity Futures Trading Commission ("CFTC"), in compliance with the Commodity Exchange Act ("CEA"). Not one of these lawsuits has merit, and they all raise substantial, disputed issues of federal law.

Plaintiff casts its cause of action as a "quintessential" Illinois state law claim, but nothing could be further from the truth. An Illinois state court would have little interest in this case because it has almost nothing to do with Illinois. Plaintiff is a Delaware LLC, and its sole member is a Florida resident who operates a litigation funding firm. Nor are any of the Defendants based in Illinois. While Plaintiff purports to stand in the shoes of Illinois residents, the Complaint does not identify any Illinois resident by name and, if successful, the recovery goes only to Plaintiff—not Illinois or any Illinois resident.

---

[1] The Susquehanna Defendants and Webull Corporation joined the Removing Defendants' Notice of Removal ("NOR") with respect to federal question jurisdiction and the Class Action Fairness Act. Dkt. No. 1.

This case also has very little to do with Illinois law because federal-law issues are at the core of Plaintiff's case. To state a claim under Illinois's Statute of Anne, Plaintiff must establish that KalshiEX's CFTC-regulated DCM was not a "regular board of trade." But, as the Illinois Supreme Court has already concluded, whether KalshiEX is a regular board of trade is an issue defined by federal law. And even if the Court resolved that initial federal question in Plaintiff's favor, the Court would still have to consider whether federal law has displaced Illinois's Statute of Anne through express or implied preemption before reaching *any* issue of Illinois law. Because Plaintiff's claim necessarily raises a substantial and disputed question of federal law, and because the action is likely to be resolved without ever reaching any issue of Illinois law, removal to federal court is both authorized and appropriate.

This Court also has diversity jurisdiction over the action because the non-diverse defendants were fraudulently joined, and subject matter jurisdiction, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff seeks to jointly try thousands of individual causes of action. For all these reasons, Plaintiff's motion should be denied.

## ARGUMENT

## I.    THIS COURT HAS FEDERAL QUESTION JURISDICTION

Plaintiff's claim under the Illinois Statute of Anne necessarily depends on the resolution of substantial questions of federal law. Compl. ¶ 6; 720 Ill. Comp. Stat. Ann. 5/28-8; Pl's Mot. at 4. An action arises under federal law for purposes of federal question jurisdiction if it is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also* 28 U.S.C. § 1331. Those elements are met here.

### A.     Federal Law is Necessarily Raised by Plaintiff's Cause of Action

To prevail in this case, Plaintiff must establish that the Defendants are "winners" from whom the alleged gambling loses are recoverable. 720 Ill. Comp. Stat. Ann. 5/28-8(a); *Sonnenberg v. Oldford Grp., Ltd.*, 2015 WL 1379505, at *6 (S.D. Ill. Mar. 24, 2015) [*Sonnenberg I*] ("non-loser plaintiffs [must] allege the elements of § 8(a), *i.e.*, who was the winner") (cleaned up). To do so, Plaintiff must show that the event contract transactions did not occur on "any regular board of trade" because "no person . . . under any circumstances, [may] be deemed a 'winner'" when the transaction in question was executed on "any regular board of trade." 720 Ill. Comp. Stat. Ann. 5/28-8(a). This necessarily raises federal-law issues—namely, whether KalshiEX is a regular board of trade. Federal law is "necessarily raised" by a state law claim where "application of the state statute must depend on [a] question of federal law." *Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 673 (7th Cir. 2020). That standard is met here because federal law defines what a board of trade is and state law "is not entitled to give an independent answer . . . different from federal law." *Id.*

The transactions in question occurred on KalshiEX's CFTC-designated "board of trade," and the CEA defines what constitutes a "board of trade." *See* 7 U.S.C. §§ 1a(6) (board of trade is "any organized exchange or other trading facility"), (37) (defining "organized exchange"), (51)(A) (defining "trading facility").[2] The Supreme Court of Illinois long ago recognized in a Statute of Anne case that the federal government may define what constitutes an authorized transaction on a regular board of trade and that state law cannot give a different answer. *Albers v. Lamson*, 42 N.E.2d 627, 630 (Ill. 1942) (the federal government "in its control of interstate commerce is

---

[2]     In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market, Order of Designation, Commodity Futures Trading Commission (Nov. 3, 2020).

supreme and [state law has] neither the power nor right to decide whether or not it may or should either authorize or prohibit the making of contracts for future deliveries" on a board of trade). Because Plaintiff "could succeed only if" KalshiEX is not a regular board of trade under the CEA, its complaint necessarily raises an issue of federal law. *Sarauer*, 966 F.3d at 674; 7 U.S.C. § 2(e) ("It shall be unlawful for any person . . . to enter into a swap unless the swap is entered into on, or subject to the rules of, a board of trade designated as a contract market under [the CEA].").

Plaintiff tries to avoid this result by claiming (at 8) that the board-of-trade provision is an affirmative defense. Not so. "When a right of action unknown to common law is created by statute, a plaintiff's compliance with the statute's requirements is an element of his cause of action." *Cordeck Sales, Inc. v. Constr. Sys., Inc.*, 917 N.E.2d 536, 541 (Ill. 2009) (lower court erred in construing statutory provision limiting a cause of action as an affirmative defense even where the provision was not contained in the same section as the statutory cause of action). The Statute of Anne is a "penal statute[] in derogation of the common law" and must be "strictly construed." *State Mut. Life Ins. Co. v. Newton*, 89 Ill. App. 353, 357 (Ill. App. Ct. 1899). Thus, Plaintiff must "prove compliance with the [statute's] provisions to establish his right to the statutory remedy." *Cordeck Sales*, 917 N.E.2d at 541.

Alternatively, Plaintiff contends (at 5) that, even if the board-of-trade provision were an element of its case-in-chief (which it is), it still would be "a state law question." Plaintiff does not cite any state law pertinent to determining whether KalshiEX is a regular board of trade, and the Complaint (¶¶ 53-56) reinforces the centrality of federal law by dedicating four full paragraphs to analyzing how Defendants are in violation of the federal Wire Act (which they are not). In any event, KalshiEX does not claim to be a board of trade under state law—it is a federally regulated DCM, and so assessing whether it is a board of trade requires the application and interpretation of

federal law. Plaintiff cannot merely wish away the entire premise of federal question jurisdiction by ignoring the central issue. Rather, "federal-question jurisdiction will lie over state-law claims" where the claim rises and falls on federal law, as it does here. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (federal jurisdiction where interpretation of federal statute was essential element of underlying claim); *see also Gunn*, 568 U.S. at 259 (federal question jurisdiction lies where federal question "is the central point of dispute"); *Sarauer*, 966 F.3d at 674 (federal question where "[f]ederal law controls").

## B.    Federal Law is Actually Disputed by the Parties

The question of whether KalshiEX is a board of trade under federal law is actually disputed by the parties. The Complaint alleges that Kalshi's event contracts are "illegal, unregulated wagers" under the Illinois criminal code and that they are "prohibited under federal law." Compl. ¶¶ 28, 56. Kalshi emphatically denies those allegations because, among many other reasons, KalshiEX is a regular board of trade expressly authorized to list the event contracts at issue in the Complaint. *Supra* I.A. KalshiEX has lawfully offered event contracts pursuant to the CEA since 2021 and sports-related event contracts since January 2025. The CFTC also has the discretion to review and disallow event contracts if it deems them contrary to the public interest—including because the contract constitutes "gaming." *See* 7 U.S.C. § 7a-2(c)(5)(C).

The fact that the CFTC has permitted Kalshi's event contracts is particularly relevant here given that the CEA gives "exclusive jurisdiction" to the CFTC to regulate swaps executed on a DCM. 7 U.S.C. § 2(a). As Defendants will explain more fully in later briefing on this matter, the CEA preempts the application of any state law purporting to regulate transactions on a DCM, as Plaintiff attempts to do here by applying the Statute of Anne to penalize Defendants. *See Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992) (the plain meaning of " 'exclusive' necessarily denies jurisdiction" to other entities not named in that provision). Congress also has manifested an

5

intent to occupy the field of regulation of transactions on DCMs, and application of the Statute of Anne here would conflict with that legislative intent. *See* 7 U.S.C. § 7(d) ("To be designated, and maintain a designation, as a contract market, a board of trade shall comply with . . . any requirement that the Commission may impose by rule or regulation pursuant to section 12a(5) of this title."); 17 C.F.R. pt. 38 (comprehensive rules regulating DCMs).

Plaintiff spends substantial effort arguing that remand should be granted because preemption is an affirmative defense, but Plaintiff misses the point. Removing Defendants contend that the Statute of Anne does not apply, by its *own* terms, because KalshiEX is a regular board of trade under federal law. This Court has subject matter jurisdiction because that federal question is embedded in the Illinois Statute of Anne. But the fact that Removing Defendants *also* intend to argue federal preemption in this litigation reinforces how distinctly "non-state" this case truly is. Even if this Court resolves the federal question necessarily raised here, this Court would still have to address federal preemption before considering whether Defendants are liable. This is because the application of the statute to penalize Defendants for engaging in transactions on a federally regulated DCM is expressly and impliedly preempted by the CEA. Thus, while Removing Defendants do not argue preemption as a basis for removal, it is nonetheless true that, only if *both* the federal board of trade issue *and* the issue of federal preemption are resolved in Plaintiff's favor, would any court reach the question of whether Defendants are subject to penalty under Illinois law. Thus, this case is particularly appropriate for resolution in federal court.

### C. The Federal Question Raised is Substantial and Capable of Being Resolved Without Disrupting State Interests

The federal question is substantial because it directly relates to whether federal and Illinois state law can be harmoniously applied, as addressed by the Supremacy Clause. U.S. Const. art. VI, cl. 2. Were Plaintiff to prevail, Defendants' conduct would be simultaneously lawful (under federal

law, which permits event contracts to be offered on Kalshi's DCM in all 50 states, including Illinois) and unlawful (under Illinois's Statute of Anne). This is a substantial question regarding the balance between federal and state law that is best determined by a federal court. *See Gunn*, 568 U.S. at 261 (calling into question the applicability of a federal statute is a substantial question).

Removal here does not intrude upon traditional state concerns; rather, it guarantees that a federal question will be adjudicated in the forum best positioned to resolve it. The Complaint does not even hint at any novel or significant interpretation of Illinois state law. Plaintiff insists (at 2) this case falls outside the "slim category" of actions in which a court may exercise federal question jurisdiction. Pl's Mot. at 2 (citing *Empire Healthchoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)). But *Grable* also recognized a meaningful category of cases where a substantial, disputed federal issue belongs in federal court. *See Empire Healthchoice*, 547 U.S. at 700 (affirming "lower court determinations that the removal [in *Grable*] was proper" because they implicated the "meaning of the federal tax provision . . . an important issue of federal law"). This case fits that mold.

The significance of this federal question is supported by the rash of related litigation regarding the intersection of state and federal law as it relates to event contracts traded on DCMs. Federal courts in New Jersey, New York, Ohio, Nevada, and Maryland are currently adjudicating whether those states' laws can be applied to regulate event contracts offered on DCMs, including Kalshi,[3] and appeals on the issue are pending in the Third, Fourth, and Ninth Circuits, with the

---

[3]    *KalshiEX LLC v. Martin*, No. 1:25-cv-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025); *KalshiEX LLC v. Flaherty*, No. 1:25-cv-02152-ESK-MJS, 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 1073495 (D. Nev. Apr. 9, 2025); *N. Am. Derivs. Exch., Inc. v. Nev. Gaming Control Bd.*, No. 2:25-cv-00978-APG-BNW, 2025 WL 2916151 (D. Nev. Oct. 14, 2025); *KalshiEX LLC v. Williams*, No. 1:25-cv-08846 (S.D.N.Y. filed Oct. 27, 2025); *KalshiEX, LLC v. Schuler*, No. 2:25-cv-01165-SDM-CMV (S.D. Ohio filed Oct. 7, 2025); *Robinhood Derivs., LLC v. Flaherty*, No. 1:25-cv-14723-ESK-MJS (D.N.J. filed Aug. 19, 2025); *Robinhood Derivs., LLC v. Dreitzer*, No. 2:25-cv-01541-APG-DJA (D. Nev. filed Aug. 19, 2025).

7

Third Circuit appeal fully submitted and awaiting decision.[4] In light of this context, Plaintiff's assertion (at 6) that the resolution of this action, with the embedded federal questions noted above, would not "be of any great importance" to the federal government is simply not credible.[5]

## II.  THIS COURT HAS DIVERSITY JURISDICTION BECAUSE THE SHAM DEFENDANTS ARE FRAUDULENTLY JOINED

This case also properly belongs in federal court under 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and the Kalshi Defendants, and the amount in controversy requirement is satisfied. Plaintiff does not dispute that, for purposes of diversity jurisdiction, there is and was, as of the filing of the Complaint, complete diversity between the Kalshi Defendants (citizens of Delaware and New York) and Plaintiff (a citizen of Florida) and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; NOR ¶¶ 28-39. Plaintiff's effort to defeat diversity jurisdiction by naming Sham Defendants (Webull Corp., SIG, and SGP) fails because they were fraudulently joined; Plaintiff "simply has no chance of success[ful]" recovery against them. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Jacobson v. Ford Motor Co.*, 1999 WL 966432, at *4 (N.D. Ill. Sept. 30, 1999). Their citizenship should be disregarded and they should be dismissed from the case.

### A.  There is No Colorable Claim Against Webull Corporation

*First*, Webull Corp. is fraudulently joined because it did not carry out the activities

---

[4]     *KalshiEX LLC v. Martin*, No. 25-01892 (4th Cir. filed Aug. 6, 2025); *KalshiEX LLC v. Flaherty*, No. 25-01922 (3d Cir. argued Sept. 10, 2025); *N. Am. Derivs. Exch., Inc. v. Nev. Gaming Control Bd.*, 2025 WL 2916151 (D. Nev. Oct. 14, 2025), *appeal docketed*, No. 25-7187 (9th Cir. Nov. 14, 2025).

[5]     None of the cases Plaintiff cites (at 2, 5-6) involve the kind of important federal issue raised here. *Cf. Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1058 (6th Cir. 2008) (single citation to "Due Process Clause . . . simply to satisfy [an] interpretation of [state law]"); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (complaint that defendant was "guilty of malpractice, negligence and breach of contract under Florida law"); *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 962 (7th Cir. 2021) ("fleeting suggestion" that action depended on question of federal law).

attributed to it in the Complaint. Webull Corp. is a global holding company, whereas Webull Financial LLC is the entity that facilitates transactions in event contracts. *See* NOR ¶ 44 (collecting public documents on these points); *see also Rosas v. BB Holdings P'ship*, 362 F. Supp. 2d 986, 989 (S.D. Ill. 2005) (defendants may show fraudulent joinder by presenting evidence outside the allegations in the complaint). Despite abundant publicly available information that Webull Financial LLC is the relevant entity, Plaintiff sued Webull Corp.—which (conveniently for this Florida Plaintiff) is a Florida resident—and not Webull Financial LLC, which (inconveniently for this Florida Plaintiff) is a citizen of Delaware and New York only.

Plaintiff's response is telling. Plaintiff effectively acknowledges it has not named the right entity but suggests (at 14) it could amend to add Webull Financial LLC, rather than substitute it for Florida-resident Webull Corp. It is no mystery why Plaintiff would propose to add the diverse defendant instead of substituting it for the non-diverse entity. Regardless, Plaintiff's conclusory assertion (at 14) that "whether or not Plaintiff amends its Complaint to add additional Webull entities, it is not fraudulent to *also* name the parent, Webull Corp.," does not hold water. A claim against both Webull Financial LLC and Webull Corp. is not colorable because the Statute of Anne provides a cause of action against a "winner"—*i.e.*, the counterparty to an allegedly unlawful transaction with an Illinois resident. The CFTC-registered futures commission merchant that works with Kalshi is Webull Financial LLC. NOR ¶ 44. Plaintiff's motion does not explain how *both* Webull entities could be the counterparty, particularly where Plaintiff concedes (at 14) that Webull Corp. is merely a parent company. Courts commonly find fraudulent joinder of parents or subsidiaries in similar circumstances. *E.g.*, *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1316 (7th Cir. 1994); *Poulos*, 959 F.2d at 73.

*Second*, Plaintiff does not allege that Webull Corp., or any other Webull entity, offered the

type of event contracts involving sporting events that the Complaint deems void under Illinois's Statute of Anne—*because none did*. At no time before the Complaint was filed did Webull offer any Kalshi contracts that involved sporting events (nor political elections, nor music).[6] The fact that Webull is not alleged to have offered—and publicly available evidence shows that it did not offer—the type of event contracts challenged here demonstrates that Webull Corp. has been fraudulently joined.

*Third*, irrespective of whether Plaintiff names Webull Corp. or Webull Financial LLC or both—and even assuming they *did* offer the allegedly unlawful event contracts during the relevant period (they did not)—Plaintiff still lacks capacity to sue. Plaintiff cannot sue any Webull entity here because Illinois's Statute of Anne gives a cause of action to a third party to sue to recover an individual's gambling losses only after the loser has failed to do so within six months following the alleged losses. 720 Ill. Comp. Stat. Ann. 5/28-8(a). Plaintiff's claim against any Webull entity is solely related to the Webull Financial-Kalshi relationship, which began in February 2025. Compl. ¶¶ 39, 63. The Complaint was filed June 11, 2025, less than six months later. Thus, no cause of action had accrued for Plaintiff as against any Webull entity when it filed its Complaint. *See Holland v. Swain*, 94 Ill. 154, 155 (1879) ("After the expiration of six months if the loser fails to sue for the money or other thing lost and paid by him, the statute authorizes any person to sue."); *Kizer v. Walden*, 198 Ill. 274, 280 (1902) (similar); *Langone v. Kaiser*, 2013 WL 5567587, at *4 (N.D. Ill. Oct. 9, 2013) (plaintiffs "must allege that a specific loser lost a certain amount and failed to bring a claim for that amount within six months").

Plaintiff does not dispute that its claim relating to Webull is outside of the actionable date

---

[6]    *See* NOR at 14 n.10; *see also* Wayback Archive, Kalshi Help Center, Markets on Brokers (listing event contracts offered through partnership with Webull Financial LLC as of June 20, 2025), https://web.archive.org/web/20250620203255/https://help.kalshi.com/markets/markets-on-brokers.

range but argues that Webull transactions will be swept into this case as "ongoing damages" once six months since the transactions elapse. *See* Pl's Mot. at 14 (citing *Smolko v. Mapei Corp.*). But *Smolko v. Mapei Corp.*, 2021 WL 7286001, at *1-3 (E.D. Ky. Nov. 15, 2021), a *pro se* products liability case seeking compensation for the death of a cat, is inapposite. *Smolko* had nothing to say about bringing a complaint prematurely for transactions that have not yet occurred—the cat was already dead. Nor could it, as it is black letter law "that a plaintiff's right to [any] recovery depends upon [its] right at the inception of the suit and the non-existence of a cause of action when the suit is brought is a fatal defect which cannot be cured by the accrual of a cause of action pending suit." *Minn. Mining & Mfg. Co. v. Plymouth Rubber Co.*, 178 F. Supp. 591, 596 (N.D. Ill. 1959); *see Texas v. United States*, 523 U.S. 296, 300 (1998) (similar). At the time of removal, Plaintiff did not have any potential causes of action arising from the Webull Financial-Kalshi relationship.

## B. There is No Colorable Claim Against the Susquehanna Defendants

Plaintiff has no colorable claim that SIG and SGP are "winners," as required for a claim under Illinois's Statute of Anne. Plaintiff has not alleged that the Susquehanna Defendants ever profited from a transaction with an Illinois resident let alone "won" an alleged wager. Compl. ¶ 29. Rather, Plaintiff's theory is that the Susquehanna Defendants indirectly profit from the alleged gambling by receiving "various financial and non-financial kickbacks from Kalshi." *Compare* Compl. ¶¶ 3, 50, *with id.* ¶¶ 35-39. This makes sense, because market makers exist in this space to support robust two-way markets, by continuously offering prices at which they will buy and sell a particular contract.[7] Unlike sportsbooks, which profit from earning a commission on losing bets, market makers earn a profit from the bid-ask spread on event contracts. But Plaintiff's "indirect

---

[7]    Market makers are a common and necessary feature of well-functioning securities and commodities markets. Sanford J. Grossman & Merton H. Miller, *Liquidity and Market Structure*, 43 J. FIN. 617 (1988).

benefit" theory against the Susquehanna Defendants is not a valid theory for recovery under Illinois's Statute of Anne. *E.g.*, *Anderson v. Naperville Rotary Charities Inc.*, 2019 WL 1368551, at \*4 (Mar. 22, 2019) ("[A] winner must participate in the bet by risking its own money. Arranging the gambling, without more, does not make an entity a winner."); *Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509, 510-11 (7th Cir. 2016) ("[C]harging a fee for engaging in gambling is not the same as winning a gamble[.]"); *Langone*, 2013 WL 5567587, at \*6 (defendant not a winner where it "merely provides a forum for the participants to engage each other"); *see also Humphrey v. Viacom*, 2007 WL 1797648, at \*10 (D.N.J. June 20, 2007) (similar).[8]

Plaintiff lacks a colorable claim against SIG for the additional reason that SIG is not alleged to have done anything other than act as a parent company. *See* Compl. ¶¶ 13, 50, 52, 57. Plaintiff concedes that the institutional market maker affiliated with Kalshi is SGP, not SIG. *See* NOR ¶ 50. For the same reasons set forth above related to Webull Corp., Plaintiff's halfhearted assertion (at 14) that it is not "impossible" that SIG could be found liable falls short of "a colorable basis" for a claim. *Poulos*, 959 F.2d at 73 (fraudulent joinder of parent where plaintiff "alleged no impropriety or disregard" of the subsidiary's corporate form).[9] Nor are such theoretical assertions enough to support a request for jurisdictional discovery. *See In re Ethylene Oxide Coordinated Pretrial Procs.*, 2024 WL 4953820, at \*3 (N.D. Ill. Dec. 3, 2024) (jurisdictional discovery

---

[8] Plaintiff makes much of the Removing Defendants' passing observation in their notice of removal that the theory of liability as to all the Defendants is "dubious." Pl's Mot. at 12. What Removing Defendants *actually* said is that, while all the claims against the Defendants are "dubious," the claim against the Susquehanna Defendants is "*uniquely* far afield," NOR ¶ 45 (emphasis added), because of the insufficiency of Plaintiff's allegations with respect to the Susquehanna Defendants in particular.

[9] Plaintiff's cases do not support the proposition that a parent company could be properly joined on a control theory. *Gebran v. Wells Fargo Bank, N.A.*, 2016 WL 7471292, at \*9 (C.D. Cal. Dec. 28, 2016) (joint-employer theory of liability under California state law); *Structural Metals, Inc. v. S & C Elec. Co*, 590 F. App'x 298, 307 (5th Cir. 2014) (no fraudulent joinder where the plaintiff "voluntarily amended its complaint to remove the non-diverse parties"); *Miceli v. Smith & Nephew, Inc.*, 2022 WL 18663123, at \*7 (S.D. Fla. Nov. 28, 2022) (involving unaffiliated products distributors, not parent companies).

"unwarranted" where parties did not "meaningfully dispute" the relevant facts).

### III.  THE COURT HAS JURISDICTION UNDER CAFA

The action is also subject to removal under CAFA as a mass action or class action. Plaintiff does not dispute that CAFA's minimal diversity or amount in controversy requirements are satisfied. Plaintiff contests only that the suit constitutes a "class" or "mass action" under CAFA.

Plaintiff gives short shrift to Removing Defendants' CAFA arguments, stating that (at 10) it "proceeds on its own behalf." This is too cute by half. The Illinois legislature intended for "the non-loser-plaintiff . . . to step into the shoes of the loser." *Langone*, 2013 WL 5567587, at *4. Thus, Plaintiff must plead a separate cause of action for each individual who lost an amount to the alleged winner. *Id.*; *Sonnenberg I*, 2015 WL 1379505, at *6 (for each transaction, plaintiff must allege "who was the winner, who was the loser, when the loss took place, and the amount of money lost"). In challenging transactions by "thousands of individuals within Illinois," Plaintiff, necessarily, is alleging thousands of *separate* causes of action. Compl. ¶ 68.

CAFA defines a mass action as "any civil action" in which "monetary relief claims of 100 or more persons are proposed to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i). This is precisely what Plaintiff purports to do: jointly try separate claims, in a single action, to recover the monetary relief that more than one hundred Illinois residents would allegedly have been entitled to under Illinois's Statute of Anne had they pursued their claims. Plaintiff will have to prove at least the following elements, with facts unique to *each* of the thousands of individual causes of action: (1) the winner; (2) the loser; (3) the illegal nature of the gambling; (4) when the loss took place; and (5) the amount of money lost. *Supra* I.A. Plaintiff's allegations that each "loser" transacted in Kalshi's event contracts is merely a common issue of fact among these individual claims. 28 U.S.C. § 1332(d)(11)(B)(i) (mass actions include joint "claims involv[ing] common questions of law or fact"). Where an action meets the definition of "mass action" in this manner, it is removable

as if it were a class action, irrespective of any artful pleading by Plaintiff.[10] *Id.*; *see also* S. Rep. No. 109-14, at 5, 60 (2005) (CAFA, enacted to avoid "gam[ing] [of] the system" and to stop "copycat class actions in various states courts around the country," is to be "interpreted liberally").

In the alternative, this case is subject to removal under CAFA because Plaintiff is acting on behalf of a class. Certain aspects of Plaintiff's claim, if they are even cognizable, could only be adjudicated if Plaintiff was the representative of a class. For example, the Complaint seeks damages "continuing until the time of final judgment." Compl. Prayer for Relief. But Plaintiff cannot sue for recovery related to transactions that have not happened yet. *Supra* II.A. If Plaintiff could only recover for "future" harm in this Complaint, it would presumably need authorization to represent a category of people that includes those who become similarly situated in the future— *e.g.*, as a class representative. *See* Fed. R. Civ. P. 23(a) (defining prerequisites for when "one or more members of a class may sue or be sued as representative parties on behalf of all members"); 28 U.S.C. § 1711(2) (defining class action with reference to Rule 23). Perhaps for this reason, Statute of Anne suits are often pleaded as putative class actions—including a recent suit brought by a different plaintiff against Kalshi under several states' Statutes of Anne, including Illinois. *See* Compl. ¶ 169, *Yee v. KalshiEx LLC*, No. 25-cv-8585-JLR, (S.D.N.Y. Oct. 16, 2025), Dkt. No. 1; *see also Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 871 (N.D. Ill. 2016) (putative class action under Illinois, California, and Michigan law).

Plaintiff also argues (at 9) that its action is akin to a case "brought by state attorneys general *on behalf of* their citizens." But none of the cases cited by Plaintiff involve a *parens patriae* action

---

[10]     The attempt (at 9) to shoehorn this case into CAFA's local single event exception is unavailing. That exception only applies where "all of the claims in the action arise from *an* event or occurrence in the State in which the action was filed," 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (emphasis added), and only covers those claims "based on a singular happening." *Allen v. Boeing Co.*, 784 F.3d 625, 631 (9th Cir. 2015). Here, Plaintiff raises thousands of individual claims based on trades executed on a DCM based in New York.

by a state where the state had to prove *individual* causes of action held by *individual* citizens of the state. Again, the Illinois Statute of Anne is not a cause of action for "damages" due to a generalized "harm." Moreover, a state in a *parens patriae* action would use any recovery to benefit the people of its state; Plaintiff, who is not an Illinois resident, seeks recovery here for its own use. Although Plaintiff's *parens patriae* authorities are inapposite, in comparing itself to these indisputably *representative* suits (at 9), Plaintiff tilts its hand.

## IV.     PLAINTIFF IS NOT ENTITLED TO COSTS AND FEES

Plaintiff's claim for costs and fees is absurd. By every measure, Removing Defendants' grounds for removal were entirely sound and well-reasoned. Absent unusual circumstances, attorney fees are only available where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 148 (2005); *Lott v. Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007). Removing Defendants easily cross this bar.

## <u>CONCLUSION</u>

Plaintiff attempts to game the system by filing a patchwork of cases across the country and creatively pleading each in an effort to avoid removal to federal court. In doing so, Plaintiff hopes it will get a series of opportunities to convince individual state court judges that Defendants' conduct in offering *federal* swaps transactions, on a *federally* regulated derivatives exchange, in an entirely lawful manner under *federal* law, constitutes unlawful gambling subject to penalty under anachronistic state law. Plaintiff has an interest in avoiding the uniform resolution of key issues regarding the intersection of state and federal law, which is more easily achieved in federal court, by preserving multiple bites at the apple in state courts. But Plaintiff's motion fails to seriously engage with the federal issues necessarily raised in its Complaint or the broader, quintessentially federal, nature of this dispute. For these reasons, Removing Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

November 19, 2025

_/s/ Matthew C. Wasserman_

**DINSMORE & SHOHL LLP**

Matthew C. Wasserman
222 W. Adams Street, Suite 3400
Chicago, IL 60606
Phone: (312) 837-4316
matthew.wasserman@dinsmore.com

**MILBANK LLP**

Sean Murphy*
Katherine Fell*
Matthew Laroche*
55 Hudson Yards
New York, New York 10001-2163
Phone: (212) 530-5000
smurphy@milbank.com
kfell@milbank.com
mlaroche@milbank.com

Joshua Sterling*
1101 New York Avenue, NW
Washington, D.C. 20005
Phone: (202) 835-7500
jsterling@milbank.com

_* Admitted pro hac vice_

_Counsel for Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, Kalshi Trading LLC, Susquehanna International Group, LLP, Susquehanna Government Products, LLLP, and Webull Corporation_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the following counsel, via electronic mail, this 19th day of November 2025.

Timothy E. Grochocinski
Charles Austin Ginnings
Taryn N. Trusty
Nelson Bumgardner Conroy PC
745 McClintock Drive, Suite 340
Burr Ridge, IL 60527
tim@nelbum.com
austin@nelbum.com
taryn@nelbum.com

Derek T. Ho
Geoffrey J.H. Block
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
dho@kellogghansen.com
gblock@kellogghansen.com

*Attorneys for Plaintiff Illinois Gambling Recovery LLC*

Eugene Scalia
Jonathan Bond
Nick Harper
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036
escalia@gibsondunn.com
jbond@gibsondunn.com
nharper@gibsondunn.com

*Attorneys for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

/s/ *Matthew C. Wasserman*
Matthew C. Wasserman

17