UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS GAMBLING RECOVERY, LLC,

Plaintiff,

v.

KALSHI INC., KALSHIEX LLC, KALSHI
KLEAR INC., KALSHI KLEAR LLC,
KALSHI TRADING LLC, ROBINHOOD
MARKETS, INC., ROBINHOOD
DERIVATIVES, LLC, SUSQUEHANNA
INTERNATIONAL GROUP, LLP,
SUSQUEHANNA GOVERNMENT
PRODUCTS, LLLP, and WEBULL
CORPORATION,

Defendants.

No. 25 CV 11374

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Federal courts have jurisdiction over civil suits asserting only state-law claims if those claims implicate significant federal issues, or if the requirements of diversity jurisdiction are satisfied. Plaintiff here filed suit in state court alleging violations of Illinois's Statute of Anne—a gambling loss recovery device originating from 18th century England. Defendants removed the case to federal court on the grounds that both federal question and diversity jurisdiction existed. Plaintiff now moves to remand the case to the Circuit Court of Cook County. For the reasons discussed below, the motion to remand is granted.

I.      Legal Standards

"Federal courts are courts of limited jurisdiction." *Qin v. Deslongchamps*, 31 F.4th 576, 582 (7th Cir. 2022) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994)). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Qin*, 31 F.4th at 582 (quoting *Kokkonen*, 511 U.S. at 377). In most cases, that means federal jurisdiction will only exist when the cause of action arises under a federal question, 28 U.S.C. § 1331, or there is diversity of citizenship between the parties, 28 U.S.C. § 1332.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

## II.    Background

This case is about event contracts—financial instruments that allow buyers to take a position on the occurrence or nonoccurrence of an event. *See* 7 U.S.C. § 7a-2(c)(5)(C)(i). For example, a citrus farmer might take out a position on a weather event to hedge against the crop losses that could accompany a sudden freeze. Event contracts typically have two possible outcomes—"yes" or "no"—and a fixed payout if the correct outcome occurs—usually $1. COMMODITY FUTURES TRADING COMM'N, *Understanding Prediction Markets and Event Contracts*, https://www.cftc.gov/ LearnandProtect/PredictionMarkets [https://perma.cc/6YVE-HW9G]. In effect,

2

selling a "yes" contract for 30¢ gives that seller a 70¢ "no" contract; if the event occurs, the seller keeps the 30¢, if it doesn't, it pays out the full dollar to the buyer. *See Id.*

This litigation centers on "prediction markets," platforms that allow users to purchase event contracts related to various outcomes. [1-1] ¶ 31.[1] One such prediction market is Kalshi. [1-1] ¶ 8. At the time of filing, Kalshi offered event contracts on topics like whether the Oklahoma City Thunder will win the NBA Finals in six games, whether Gavin Newsom will be the Democratic nominee for President in 2028, and whether Bruno Mars will have the most Spotify listeners at the end of June. [1-1] ¶ 32. To some, prediction markets like Kalshi resemble a bookmaker more than a designated contract market. [1-1] ¶¶ 36–37, 55.

Illinois Gambling Recovery LLC, the plaintiff in this case, is a Delaware company formed to enforce Illinois gambling laws through civil action. [1-1] ¶ 7. Illinois Gambling Recovery's sole member is a natural person domiciled in Florida; it is therefore a Florida citizen for the purposes of diversity of citizenship. 25-cv-11394, [1] ¶¶ 29–30. Its position is that prediction markets are, for practical purposes, just sportsbooks engaged in gambling. [1-1] ¶ 37. In contrast to designated contract markets, which are exclusively regulated at the federal level, gambling is heavily regulated by the states, including Illinois. *See* [1-1] ¶¶ 24–26. Unless an exception

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1-1], and the notices of removal from this case, [1], and the later-filed case, Case No. 25-cv-11394 (N.D. Ill.), [1] (cited as 25-cv-11394).

applies or the wager is placed with a state-licensed facility or digital platform, gambling is unlawful in Illinois. [1-1] ¶¶ 25–26, 54.

Defendants are ten companies connected to Kalshi's prediction markets. [1-1]. Kalshi Inc. is a Delaware corporation with its principal place of business in New York and the parent holding company of KalshiEx LLC, Kalshi Klear Inc., and Kalshi Klear LLC. [1-1] ¶¶ 7–12. Kalshi Klear Inc. is a wholly owned subsidiary of Kalshi Inc. and the sole member of Kalshi Klear LLC. 25-cv-11394, [1] ¶ 5. KalshiEx's sole member is Kalshi Inc. 25-cv-11394, [1] ¶ 32. All Kalshi defendants are therefore citizens of Delaware and New York. 25-cv-11394, [1] ¶¶ 31–35.

Robinhood Markets, Inc. is a Delaware corporation with its principal place of business in California, and the sole member of Robinhood Derivatives, LLC. 25-cv-11394, [1] ¶¶ 35–36. Both Robinhood defendants are thus citizens of Delaware and California. Robinhood is an investment platform that permits trading in stocks, ETFs, and other commodities. [1-1] ¶ 15. Robinhood has partnered with Kalshi to provide a prediction market hub on the Robinhood platform, allowing users to purchase event contracts. *Id.*

Webull Corporation is a Cayman Islands holding company with its principal place of business in Florida. 25-cv-11394, [1] ¶ 9. One of Webull Corporation's indirect subsidiaries is Webull Financial LLC, which has a partnership with Kalshi. 25-cv-11394, [1] ¶ 10. Webull Financial LLC's sole member is Webull Holdings (US) Inc., which is a Delaware corporation with its principal place of business in New York. 25-cv-11394, [1] ¶ 12. Webull Holdings (US) Inc. is a wholly owned subsidiary of

Webull Corporation. Webull Corp., Annual Report (Form 20-F), at 91 (Apr. 25, 2025), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001866364/00012139 0025035656/ea0235698-20f_webull.htm. Through these various entities, Webull operates a digital investment platform with over 23 million registered users globally. *Id.* at 49. Since February 2025, Webull has partnered with Kalshi to offer a prediction market hub on the Webull platform. [1-1] ¶ 39.

Susquehanna Government Products, LLLP and Susquehanna International Group, LLP are both Delaware limited liability partnerships and citizens of Florida for purposes of diversity jurisdiction. 25-cv-11394, [1] ¶¶ 13–14. Susquehanna International Group is a partner of Susquehanna Government Products. 25-cv-11394, [1] ¶ 14. Susquehanna defendants operate as institutional market makers for Kalshi, buying and selling event contracts on the platform. [1-1] ¶¶ 13–14.

Illinois Gambling Recovery filed suit against these ten defendants in the Circuit Court of Cook County, alleging a single count for violations of Illinois's Loss Recovery Act, 720 ILCS 5/28-8. [1-1]. The Robinhood defendants filed a notice of removal, [1], and the remaining defendants filed a separate notice of removal that same day, 25-cv-11394, [1]. The cases were subsequently consolidated. 25-cv-11394, [22]. Plaintiff now moves to have the action remanded to the Circuit Court of Cook County for lack of subject matter jurisdiction. [21].

5

## III.    Analysis

Defendants present three theories for federal jurisdiction: diversity jurisdiction under § 1332(a),[2] diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal jurisdiction under § 1331. All three come up short and are addressed in turn.

### A.    Diversity Jurisdiction

District courts have original jurisdiction over all civil actions between citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction under § 1332(a) requires "complete diversity," meaning "no party on the plaintiff's side of the suit shares citizenship with any party on the defendant's side." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021).

Because plaintiff Illinois Gambling Recovery, the Susquehanna defendants, and Webull Corporation are all Florida citizens, the parties are not completely diverse. Defendants allege two alternatives to the usual diversity requirement: fraudulent joinder and the Class Action Fairness Act. Neither is applicable.

#### 1.    *Fraudulent joinder*

The fraudulent joinder doctrine provides an exception to the requirement of complete diversity when the plaintiff joined a nondiverse defendant against whom the claim has "no chance of success." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). "To establish fraudulent joinder, a removing defendant 'must show that, after

---

[2] Only the five Kalshi defendants argue for jurisdiction under § 1332(a).

resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Id.* (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)) (emphasis in original). "If the removing defendant can meet this 'heavy burden,' the federal district court considering removal may 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Morris*, 718 F.3d at 666 (quoting *Poulos,* 959 F.2d at 73; *then Schur,* 577 F.3d at 763).

The defendants cannot meet that burden here. The allegations in the complaint state a cause of action against the Susquehanna defendants. Susquehanna is a "market maker," meaning that it provides liquidity to prediction markets by serving as the counterparty for event contracts. [1-1] ¶¶ 43, 50. If the event contracts are unlawful gambling, then the market makers would be the "winner" of any contract that does not pay out, regardless of whether they choose to balance their risk by purchasing an appropriate number of opposing positions. *See* [1-1] ¶ 43. At a minimum, the allegations against plaintiff's fellow Florida citizen Susquehanna Government Products, the entity that is directly associated with Kalshi, are sufficient.

Kalshi defendants argue that Susquehanna International Group and Webull Corporation are fraudulently joined because they are parent companies and therefore not liable. 25-cv-11394. [1] ¶¶ 44, 50. But there is a colorable argument for parent liability under Illinois law: "a court may disregard a corporate entity and pierce the

veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity." *A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 24. Even if the odds of piercing the corporate veil are low, they are still real enough to make joinder non-fraudulent. Since those two grounds are sufficient to recognize the citizenship of both Susquehanna defendants, I do not consider Kalshi's argument that plaintiff lacks standing to bring a Loss Recovery Act claim against Webull because the six-month window for third parties to bring such claims had not passed at the time of filing.

### 2. *Class Action Fairness Act*

The Class Action Fairness Act confers federal-court jurisdiction when the civil action is a class action, the amount in controversy exceeds $5,000,000, there are at least 100 class members, and there is minimal diversity between plaintiffs and defendants for jurisdiction. 28 U.S.C. § 1332(d). A "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

This is not a class action. Illinois Gambling Recovery brings this action on its own behalf and expressly disavows any relationship or collusion with—let alone representation of—any Illinois gamblers. *See* [1-1] ¶ 7. That is permitted by the Illinois Loss Recovery Act, which provides "any person" with a right of action against a winner after six months from the date of loss. 720 ILCS 5/28-8(b). If plaintiff wanted to bring claims to recover for damages less than six months old, it would have to use a class action to sue on behalf of all those injured—but plaintiff makes no such

8

attempt, and the absence of claims typical of such class members would likely preclude a representative action. *See* Fed. R. Civ. P. 23(a)(3) (representative party must have claims "typical of the claims or defenses of the class").

Beyond six months, representative claims are not possible because the gambler is no longer able to sue on their own behalf. *Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509, 510 (7th Cir. 2016) (noting that the gamblers in that case could not "sue because they admit[ted] in their complaints that they failed to sue within six months of the losses that they sustained"); *Kizer v. Walden*, 198 Ill. 274, 280 (1902) (noting prior holding that the legal effect of the provision allowing a third party to sue after six months "is to limit the time in which the loser may bring his action to six months, and to bar the bringing of such action after the lapse of that time"). The six-month bar even applies to suits nominally brought by a third party that are in the interest of the gambler. *Kizer*, 198 Ill. at 283. Third-party actions under 720 ILCS 5/28-8(b) are not—and cannot be—brought by "representative persons as a class action."[3]

*Addison Automatics, Inc. v. Hartford Cas. Inc. Co.*, 731 F.3d 740 (7th Cir. 2013) is not to the contrary. The plaintiff in *Addison* was a class representative who had

---

[3] Even accepting, for the sake of argument, defendant's position that this suit is brought "in a manner similar to a class action under Federal Rule of Civil Procedure 23" and thus § 1332(d) applies, [1] ¶ 10, there is still only a single plaintiff, and the exclusion for class actions with fewer than 100 members would bar jurisdiction. 28 U.S.C. § 1332(d)(5)(B); *see also Ohio Gambling Recovery, LLC v. Kalshi Inc., et al.*, No. 4:25-cv-1573, 2026 WL 865788 at *8 (N.D. Ohio Mar. 30, 2026) (holding that CAFA does not apply because there is only one plaintiff).

been assigned—only in its capacity as class representative—claims against absent liability insurers. *Id.* at 741. In a separate action, the plaintiff sought a declaratory judgment establishing the insurer's liability for the damages of all class members. *Id.* at 742. The case had a certified class, the class members each had a theoretical right to recovery, and the plaintiff sought to recover for those claims, not merely its own. *Id.* 741–43. Illinois Gambling Recovery is not seeking to be, nor has it ever been, a class representative. Its right to recovery is its own, and that is the only relief it seeks.

This case is also not a "mass action" under § 1332(d)(11). Plaintiff is not bringing the "monetary relief claims of 100 or more persons," it is only bringing its own claims. The gamblers have no claims to monetary relief after six months. Even if they were the claims of the gamblers, jurisdiction would "exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under" § 1332(a). 28 U.S.C. § 1332(d)(11)(B)(i). Defendants, who bear the burden of establishing federal jurisdiction, have not made any showing that the claims exceed $75,000. The Loss Recovery Act applies to losses of $50 or more, so the requisite amount in controversy cannot be reasonably inferred.

Section 1332 does not provide original jurisdiction over this case.

### B.    Federal Question Jurisdiction

District courts also "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.,* claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312

(2005). However, even in cases alleging only state-law claims, federal question jurisdiction will still exist if those claims implicate significant federal issues. *Id.* "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013).

A federal defense does not create federal question jurisdiction. Under the "well-pleaded complaint" rule, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 9–10 (1983) (emphasis in original). "Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Id.* at 10 (citing *Taylor v. Anderson,* 234 U.S. 74, 75–76 (1914); *then Louisville & Nash. R. Co. v. Mottley,* 211 U.S. 149 (1908); *then Tenn. v. Union & Planters' Bank,* 152 U.S. 454 (1894)). For a federal question to be a jurisdictional part of plaintiff's complaint, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd.,* 463 U.S. at 10–11 (quoting *Gully v. First National Bank,* 299 U.S. 109, 112 (1936)).

11

The Illinois Loss Recovery Act, 720 ILCS 5/28-8, reads, in relevant part:

(a) Any person who by gambling[4] shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either in his own name or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity or stock exchange, shall, under any circumstances, be deemed a "winner" of any moneys lost by such other person in or through any such transactions.

Defendants' theory is that, to prove that they are "winners" under the Loss Recovery Act, plaintiff must establish that defendants are not covered by the Act's "board of trade" provision. [1] ¶ 4. And additionally, that "board of trade" in the Loss Recovery Act is necessarily defined by reference to federal law. [1] ¶ 5.[5] Neither is accurate.

Defendants do not cite any Illinois case law supporting their position that "a plaintiff must plead and prove that the transactions did not occur on such an

---

[4] *Ga. Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), which defendants submitted as supplemental authority, applies Georgia law, which has a different definition of "gambling" compared to Illinois law. Whether a gambling contract is void and thus subject to recovery under Georgia law "depends on whether the contract is unlawful under the law governing its validity," which necessarily touches on issues of federal law. *Id.* at *3. Illinois, by contrast, provides extensive statutory definitions and exceptions for gambling under state law. *See* 720 ILCS 5/28-1.

[5] While plaintiff makes brief allegations in its complaint that defendants violated the Wire Act, 18 U.S.C. § 1084, *see* [1-1] ¶¶ 56–57, the existence of any Wire Act violation is not "necessarily raised" by the state-law claim.

12

exchange." *See* [25] at 12–15; [26] at 9–11.[6] In Illinois, "where a party claims that an action or individual falls within an exception to a statute, that party has the burden of establishing the applicability of the exception." *Moore v. Dep't of Hum. Servs.*, 2025 IL App (1st) 240561, ¶ 36; *cf. Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025) ("There is a well-settled 'general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.'").

The structure of the Loss Recovery Act also supports such a reading. The right of action and the exception are in a single section, but the definitional carveout is set out in a subsequent sentence, not the enacting clause. *See* 720 ILCS 5/28-8(a). "Where there is an exception in the enacting clause of a statute, the plaintiff, suing under it, must show that the defendant is not within the exception; but if there be an exception in a subsequent clause, that is a matter of defense, and the other party must show it, to exempt himself from the penalty." *People ex rel. Ill. Armory Bd. v. Kelly*, 369 Ill. 280, 284 (1938).

Courts applying the Loss Recovery Act consistently elide the board-of-trade exception when defining "winner." *E.g.*, *Sonnenberg*, 810 F.3d at 510 ("A winner would be a person whom a player had played with and lost to."); *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 14 ("The only 'direct' connection required under section 28-8(a) is

---

[6] *Albers v. Lamson*, 42 N.E.2d 627 (1942), does not address what is required for a plaintiff to state a claim under the Loss Recovery Act. Rather, it addresses developments in federal regulation and state public policy to assess whether certain futures conduct should be understood to be prohibited gambling. *Id.* at 630.

that one person lose at gambling to another."); *Anderson v. Naperville Rotary Charities Inc.*, 2019 IL App (1st) 180312-U, ¶ 18 (noting that "a winner under the Loss Recovery Act must put its own money at risk"); *Ranney v. Flinn*, 60 Ill. App. 104, 105 (3d Dist. 1894) ("It is the winner, not the keeper of the house, who is liable to respond to the loser, or if he does not sue within six months, to whoever may sue."). Whether defendants are a "board of trade" and thus excepted from the Loss Recovery Act is not part of plaintiff's well-pleaded complaint.

Even if plaintiff needed to allege that the relevant transactions did not occur on a board of trade, federal law would not be necessarily raised. Defendants argue that "regular board of trade" must be interpreted by reference to the Commodities Exchange Act. *See* [25] at 12–13; [26] at 9; 7 U.S.C. § 1a(6) (defining "board of trade"). But an earlier version of the exception for a "regular board of trade" was added to the Illinois Statute of Anne in 1913, *Miller v. Sincere*, 273 Ill. 194, 197–98 (1916), and the Commodities Exchange Act was not passed until 1936, Pub. L. No. 74-675, 49 Stat. 1491 (1936). Even its predecessor law, the Grain Futures Act, was not enacted until 1922. Pub. L. No. 67-331, 42 Stat. 998 (1922). The Illinois General Assembly, by contrast, granted the Chicago Board of Trade, the oldest and largest commodities exchange market in the United States, a charter in 1859. *Bd. of Trade of City of Chi. v. Dow Jones & Co.*, 98 Ill.2d 109, 111–112 (1983). There is little reason to believe that the Illinois legislature meant to define "board of trade" by reference to a statute that did not yet exist, or that they have altered the statute to incorporate such reference since 1936. To the extent that defendants argue that the Commodities

14

Exchange Act preempts state gambling law on event contracts, *see* [25] at 13, that is an affirmative defense not within the scope of the well-pleaded complaint. *See also* [26] at 12 (noting that defendants do not argue preemption as a basis for removal).

The final two factors—substantiality and capability of resolution without disrupting the congressionally approved balance of federal and state judicial responsibilities—also point in favor of remand. "The substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. There is no federal agency involved in this case, *see* [1-1], federal regulators are pursuing related litigation elsewhere, *see* [38], and federal courts are already developing law on the preemption issues, *see* [39]. Whether these defendants are exempt from a state gambling law is not an important issue to the federal system as a whole. *See also Ky. Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-54-GFVT, 2026 WL 596107 at *6–*7 (E.D. Ky. Mar. 4, 2026) (concluding that the federal issue in a substantially identical case under Kentucky law was not substantial).

The absence of a substantial federal question necessarily means that federal courts should not upset the state-federal balance favoring state courts adjudicating state law. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 528 (7th Cir. 2021) ("Principles of comity entitle the states to make their own decisions, on federal issues as well as state issues, unless there is some urgent need for federal intervention."). Illinois courts can resolve the limited federal issues that may arise in the interpretation of this Illinois statute.

The complaint does not arise under federal law, and § 1331 does not provide jurisdiction.

## C. Fee Shifting

I do not award costs or fees to plaintiff for bringing this motion to remand. While 28 U.S.C. § 1447(c) grants district courts the authority to require payment of actual expenses when remanding a case, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Defendants' arguments in favor of removal have been accepted by at least one district court. *See Ga. Gambling Recovery LLC v. Kalshi, Inc.*, No. 4:25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026). It was not objectively unreasonable to pursue them.

## IV. Conclusion

Illinois Gambling Recovery's motion to remand, [21], is granted. The case is remanded to the Circuit Court of Cook County for further proceedings. Terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 29, 2026

16